UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN RODGERS,<br>Plaintiff,<br>v.<br>CITY OF RENTON ET AL.,<br>Defendants. | CASE NO. 2:26-cv-00293-JHC<br>ORDER |

## I
## Introduction

This matter comes before the Court on: (1) Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability (Dkt. # 59); (2) the Renton Defendants'[1] Motion for Summary Judgment (Dkt. # 70); (3) Shawn McCully's and Valley Defenders' Cross-Motion for Summary Judgment (Dkt. # 72); and (4) Defendants' Motions to Strike (Dkt. ## 62 at 2–5; 72 at 2–4). The Court has reviewed the materials filed in support of and in opposition to the motions, the record, and the governing law. Being fully advised, for the reasons below, the Court: (1) DENIES Plaintiff's Motion for Summary Judgment (Dkt. # 59); (2) GRANTS Defendants' Motions for

[1] The Renton Defendants consist of the City of Renton, the Renton Municipal Prosecutor's Office, Commander Gray, Officer Sagiao, Officer Adam, Officer Ridgeway, Iva Clark, Leila Curtis, Seth Lee, Elle Moore, and the "Doe Prosecutors." *See* Dkt. # 70 at 1.

Summary Judgment (Dkt. ## 70 & 72); (3) GRANTS Defendants' Motions to Strike (Dkt. ## 62 & 72); and (4) DISMISSES all remaining claims with prejudice.

## II
## BACKGROUND

Pro se Plaintiff Steven Rodgers brings this civil rights action against the City of Renton, the Renton Municipal Prosecutor's Office, certain members of the Renton Police Department (Commander Gray and Officers Ridgeway, Adams, and Sagiao), various prosecutors at the Renton Municipal Prosecutor's Office (Ms. Clark, Ms. Curtis, Mr. Lee, Ms. Moore, and other unknown prosecutors), Valley Defenders, PLLC, and an attorney who works for Valley Defenders (Mr. McCully). Dkt. # 17 at 5–8. The facts are somewhat disputed.

According to the First Amended Complaint (FAC), Plaintiff placed an online pizza order from Domino's on January 27, 2023. *Id.* at 9. Because of his unfamiliarity with the online payment system, he unintentionally paid twice for his order: he first paid $66.14 online, and he then paid $70 in cash to Jason Lang, the driver who delivered his order. *Id.* Once he realized his mistake, he called the Domino's store and spoke with the store's manager—Jaycob Wheeler. *Id.* Mr. Wheeler told him that his order had been cancelled and that he would receive a refund on his card within a few business days. *Id.* at 10. Plaintiff then called the store a second time to discuss his cash payment to Mr. Lang, at which point he "was invited by [Mr. Wheeler] to come identify the driver who took his cash. *Id.* at 12. About 10 minutes later, Plaintiff arrived at the store. *Id.* at 14.

Per the FAC, Plaintiff's arrival at the store was "met with hostility[,]" with Mr. Wheeler cursing at Plaintiff and becoming "agitated." *Id.* Mr. Wheeler then went to retrieve Mr. Lang, returning shortly thereafter with Mr. Lang and another employee—Tiffany Allen. *Id.* Words were exchanged between Plaintiff and the employees. *Id.* at 15. And Ms. Allen soon "stepped

around in front of [Mr. Lang]" and yelled "'[the n-word]!' while standing in Plaintiff's face."[2] *Id.* In response, Plaintiff "used an open-handed push to create distance." *Id.* at 19. Afterward, 911 was called and Plaintiff left the scene. *See id.* at 98, 140, 157.

According to the Renton Defendants, at approximately 10:21 p.m. that night, members of the Renton Police Department were dispatched to the Domino's Pizza store located at 20 SW 7th Street in Renton, Washington "to respond to a 911 call regarding an assault on an employee." Dkt. # 65 at 3. Dispatch also informed the officers "that the suspect had left the scene in a white BMW with the license number CCX5080." *Id.* At approximately 10:24 p.m., Officer Ridgeway arrived at the store and "found a group of people standing in the parking lot waiting for [the police.]" *Id.* He asked the group who had been assaulted, at which point Ms. Allen identified herself as the victim and told Officer Ridgeway "that a man, later identified as Steven Rodgers, had 'judo chopped' her in the 'neck' with so much force it knocked her back." *Id.* Mr. Wheeler then provided Officer Ridgeway with a summary of his interactions with Plaintiff that evening. *See id.* at 3–4. In response, Officer Ridgeway asked Ms. Allen if she would like to press charges. *Id.* at 4. She said that she did, and Officer Ridgeway took photographs of her neck to document the faint redness that he saw on it. *Id.*

The Renton Defendants further aver that while Officer Ridgeway was speaking with the Domino's employees, Officer Sagiao spoke with Plaintiff on the phone. *Id.* at 5. During the phone call, Plaintiff explained his version of the night's events and told Officer Sagiao that "he had pushed 'the little Chinese girl' after she stepped up to him and used a racial slur." *Id.* at 5–6. While on the scene, Officer Ridgeway also interviewed Mr. Lang, and he learned from Mr. Wheeler that the restaurant had a CCTV system that likely captured the incident on video. *Id.* at

---

[2] According to Ms. Allen, Plaintiff "started to insult [her] race so [she] reciprocated back[.]" Dkt. # 65-4 at 1.

6. Based on the multiple eyewitness reports, as well as Plaintiff's own admission that he had shoved Ms. Allen, Officer Ridgeway "concluded that there was probable cause to believe [Plaintiff] had committed the crime of Assault in the 4th Degree[.]" *Id.* Officer Ridgeway then called Plaintiff and told him that he would be mailing him a criminal citation for the assault. *Id.* During this conversation, Plaintiff apparently asked Officer Ridgeway if Ms. Allen and Mr. Lang would be cited for "verbal assault" and theft, respectively. *Id.* Officer Ridgeway said no, as "using offensive language is not an assault" and Mr. Lang's alleged failure to return Plaintiff's money constitutes a civil matter. *Id.* He then completed his written report and the criminal citation, thereby ending his involvement with Plaintiff until this lawsuit was filed. *Id.* at 6–7.

Per the submitted evidence, it appears that at some point between January 27 and February 7, 2023, the Renton Police Department shared Plaintiff's case file with the Renton Municipal Prosecutor's Office. *See generally* Dkt. # 68. According to the Renton Defendants, after receiving the file, Mr. Lee reviewed it and determined that there was not only probable cause to charge Plaintiff with Assault in the 4th Degree under RCW 9A.36.041(1), but also sufficient evidence to establish Plaintiff's guilt beyond a reasonable doubt. *See* Dkt. # 68 at 2. Mr. Lee then signed and filed the Criminal Complaint, and later, the Second Amended Complaint, charging Plaintiff with the misdemeanor of Assault in the 4th Degree. *Id.* at 1; *see also* Dkt. ## 68-1 (Criminal Complaint); 68-2 (Second Amended Complaint). Afterward, Mr. Lee and other prosecutors at the Renton Municipal Prosecutor's Office—namely, Ms. Moore, Ms. Curtis, and Ms. Clark—signed certain case-related documents, appeared on behalf of the City of Renton at various hearings, and otherwise worked on the case until Plaintiff's assault charge was dismissed in May 2025. *See* Dkt. ## 66 at 1; 67 at 1; 68 at 1; 69 at 1.

According to Defendants McCully and Valley Defenders, the Renton Municipal Court appointed Valley Defenders to represent Plaintiff on February 27, 2023. Dkt. # 74 at 1. Soon

thereafter, Eric Lewis began representing Plaintiff in the underlying misdemeanor action. *Id.* Per Mr. Lewis, over the next few months he conducted multiple calls with Plaintiff, reviewed information provided by Plaintiff, reviewed discovery provided by the City of Renton, and took certain steps to secure the CCTV video of the incident. *Id.* at 1–2. On September 20, 2023, the case was transferred to Mr. McCully, as Plaintiff was apparently "unhappy" with Mr. Lewis's representation. *Id.* at 2. Defendants' evidence shows that upon taking over the representation, Mr. McCully immediately asked the prosecutors about the status of the CCTV video and told them that he would be subpoenaing the video from Domino's. Dkt. # 73-5 at 2. A few weeks later, the Renton Municipal Court informed Mr. McCully and Valley Defenders that Plaintiff wanted a new attorney. *See* Dkt. # 73-6 at 1. Mr. McCully's and Valley Defenders' representation of Plaintiff was then terminated, *see* Dkt. # 73-7 at 1, and on December 27, 2023, Kimberly McAvoy appeared on behalf of Plaintiff and the Renton Municipal Court substituted her as counsel. *See* Dkt. # 73-8 at 1.

On April 17, 2024, Ms. McAvoy proposed to the prosecutors a resolution of the case: a Stipulated Order of Continuance (SOC) conditioned upon Plaintiff having no contact with the Domino's store and all persons involved in the incident for 12 months. *See* Dkt. # 73-10 at 4. The prosecutors agreed to the SOC, *id.* at 2, and it was entered by the Renton Municipal Court on May 22, 2024. *See* Dkt. # 73-11. Plaintiff complied with the SOC and its terms, and one year later, Plaintiff's misdemeanor assault charge was dismissed with prejudice. *See* Dkt. ## 69 at 1–2; 69-2 at 1.

Eight months later, Plaintiff sued the named Defendants. *See* Dkt. ## 1 (Complaint) & 17 (FAC). The FAC asserts the following claims: (1) a 42 U.S.C. § 1983 malicious prosecution claim against the prosecutors and Officers Ridgeway, Adams, and Sagiao; (2) a 42 U.S.C. § 1983 racial discrimination/equal protection violation claim against all Defendants; (3) a 42 U.S.C.

§ 1983 failure to intervene claim against Officer Adams, Officer Sagiao, and Commander Gray; (4) a 42 U.S.C. § 1983 supervisor liability claim against Commander Gray; (5) a 42 U.S.C. § 1983 municipal liability claim against the City of Renton and the Renton Municipal Prosecutor's Office; (6) a 42 U.S.C. § 1985 conspiracy to violate civil rights claim against all Defendants; (7) a 42 U.S.C. § 1983 Brady violation/prosecutorial misconduct claim against the prosecutors; (8) a 42 U.S.C. § 1983 coerced plea/due process violation claim against the prosecutors; (9) a state law intentional infliction of emotional distress (IIED) claim against all Defendants; (10) a state law negligent investigation claim against the City of Renton and Officers Ridgeway, Adams, and Sagiao; (11) a state law defamation claim against Officers Ridgeway, Adams, and Sagiao; (12) a 42 U.S.C. § 1985 civil conspiracy claim against all Defendants; (13) a 42 U.S.C. § 1983 ineffective assistance of counsel/sixth amendment violation claim against the prosecutors, Mr. McCully, and Valley Defenders; and (14) a state law constructive fraud/breach of fiduciary duty claim against Mr. McCully and Valley Defenders. *See* Dkt. # 17 at 145–61.

Plaintiff has since clarified that he has "removed all conspiracy claims from this action[.]" Dkt. # 53 at 2; *see also* Dkt. # 24 at 2 ("Plaintiff does not rely on a conspiracy theory to establish liability."). And so the only remaining claims in this action are Plaintiff's state-law claims and his "claims under 42 U.S.C. § 1983 for malicious prosecution, equal protection violation (racial discrimination), failure to intervene, supervisory liability, municipal liability, Brady violations, coerced plea, and Sixth Amendment violation." Dkt. # 53 at 3; *see also* Dkt. ## 70 at 13 (the Renton Defendants confirming which claims remain against them); 72 at 10–12 (Mr. McCully and Valley Defenders confirming the same).

The parties now cross-move for summary judgment. *See* Dkt. ## 59, 70, & 72. Plaintiff requests that the Court "grant summary judgment on the issue of liability against all named

Defendants and order this matter to proceed strictly to trial on the issue of damages." Dkt. # 59 at 41–42. Defendants respond that the Court should strike certain exhibits submitted with Plaintiff's Motion for Summary Judgment (Dkt. # 59) as improper. Dkt. ## 62 at 2–5; 72 at 2–4. They also request that the Court deny Plaintiff's motion and instead, enter summary judgment for Defendants on all claims. *See* Dkt. ## 62 at 28; 72 at 20; 70 at 1.

## III
## DISCUSSION

A. Motions to Strike

Defendants move to strike various exhibits under Federal Rule of Civil Procedure 12(f), Local Civil Rules 7(e), 7(g), & 56, and the Court's Orders at Dkt. ## 46 & 48. *See* Dkt. ## 62 at 2–5; 72 at 2–4. Plaintiff's filings do not provide a valid legal basis to deny such motions. *See, e.g.*, Dkt. ## 75 at 8–10 (arguing that the Motion to Strike at Dkt. # 62 should be denied because of estoppel, Defendants' evidentiary submissions, certain "uncontradicted" evidence in the record, and Defendants' purported misconduct); 78 (declining to address or respond to the Motion to Strike at Dkt. # 72). Thus, for the reasons presented by Defendants in their motions, the Court GRANTS Defendants' Motions to Strike (Dkt. ## 62 & 72) and STRIKES the following exhibits:

- Exhibit 11 (Dkt. # 59-14)
- Exhibit 15 (Dkt. # 59-18)
- Exhibit 16 (Dkt. # 59-19)
- Exhibit 17 (Dkt. # 59-20)
- Exhibit 18 (Dkt. # 59-21)
- Exhibit 19 (Dkt. # 59-22)
- Exhibit 20 (Dkt. # 59-23)

- Exhibit 21 (Dkt. # 59-24)
- Exhibit 22 (Dkt. # 59-25)
- Exhibit 22A (Dkt. # 59-26)
- Exhibit 23 (Dkt. # 59-27)
- Exhibit 24 (Dkt. # 59-28)
- Exhibit 25 (Dkt. # 59-31)
- Exhibit 26 (Dkt. # 59-34)
- Exhibit 27 (Dkt. # 59-35)
- Exhibit 28 (Dkt. # 59-36)
- Exhibit 29A (Dkt. # 59-38)
- Exhibit 30 (Dkt. # 59-39)
- Exhibit 33 (Dkt. # 59-42)

The Court, however, declines Defendants' request to award fees and costs associated with these motions. *See* Dkt. # 72 at 4.

B. Motions for Summary Judgment

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" if "there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they are entitled to prevail as a matter of law on all claims for which they seek summary judgment. *See Celotex*, 477 U.S. at 323. To carry this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. And while the court must draw all "justifiable inferences" in the nonmoving party's favor, "[t]he mere existence of a scintilla of evidence in support of [that party's] position will be insufficient[,]" and missing facts will not be presumed. *Anderson*, 477 U.S. at 252, 255; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

For the reasons below, the Court concludes that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law on each of Plaintiff's remaining claims. It thus GRANTS Defendants' Motions (Dkt. ## 70 & 72), DENIES Plaintiff's Motion (Dkt. # 59), and DISMISSES all remaining claims with prejudice.

1. All Claims Against Ms. Clark, Ms. Curtis, Mr. Lee, Ms. Moore, and the "Doe Prosecutors"

The Renton Defendants contend that all of Plaintiff's claims against the prosecutors are barred by prosecutorial immunity. *See* Dkt. # 70 at 13–14. The Court agrees.

Under well-established state and federal law, prosecutors have "absolute immunity from damages liability for actions 'intimately associated with the judicial phase of the criminal process[.]'" *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (quoting *Imbler v.*

*Pachtman*, 424 U.S. 409, 430 (1976)); *see also Musso-Escude v. Edwards*, 101 Wash. App. 560, 567–68, 4 P.3d 151 (2000) (holding that the "[a]nalysis of a prosecutor's absolute immunity from suit under [Washington state law] . . . tracks . . . [the] analysis under 42 U.S.C. § 1983"). And while "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor[,]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), a prosecutor is absolutely immune if they can demonstrate that they were performing a traditional prosecutorial function. *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842–43 (9th Cir. 2016) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)); *Torres*, 793 F.3d at 1051. For example, initiating a prosecution, engaging in a professional evaluation of the evidence, or presenting the state's case in court. *See id.*

Here, the Renton Defendants have established that the prosecutors are absolutely immune for the acts they took in connection with Plaintiff's state court case. The Renton Defendants' evidence shows that the prosecutors were exclusively involved in the judicial phase of Plaintiff's criminal process. *See* Dkt. ## 66–69. Plaintiff has not rebutted this evidence. *See generally* Dkt. Nor does the Court find any other facts or arguments in the record that would permit a reasonable juror to find that the prosecutors were performing investigative or administrative functions as opposed to pure prosecutorial functions. *See id.*; *see also* Dkt. ## 79 at 11 (arguing that absolute immunity should not be applied because it is "an administrative smokescreen"); 59 at 15–16 (stating that absolute immunity should not be applied because the prosecutors engaged in three "extrajudicial investigative acts": suppressing body cam footage of the complaining witness confessing to theft, introducing a post-hoc witness—Aso Kawani—who was absent from the initial reports, and engaging in an extrajudicial email exchange with defense counsel); 70 at 14 (explaining that Aso Kawani was first identified in Mr. Wheeler's written statement); 65-3 at 3 (Mr. Wheeler's written statement, dated January 27, 2023, identifying Aso Kawani's name); 83

at 1 (noting that Plaintiff has presented no evidence or even argued that the prosecutors "had any involvement outside of the judicial phase of the criminal process after the police investigation had already concluded").

The Court thus concludes that all claims[3] against the prosecutors are barred by prosecutorial immunity, and so it DENIES Plaintiff's Motion and GRANTS summary judgment in favor of Ms. Clark, Ms. Curtis, Mr. Lee, Ms. Moore, and the "Doe Prosecutors" on all claims.

2. All § 1983 Claims Against Mr. McCully and Valley Defenders

Mr. McCully and Valley Defenders contend that Plaintiff's § 1983 claims against them should be dismissed because § 1983 does not apply in this scenario. *See* Dkt. # 72 at 12–15. The Court agrees.

"To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). A person "acts under color of state law," however, "only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (internal quotation marks and citations omitted). Thus, most private conduct is excluded from the reaches of § 1983 liability, no matter how discriminatory or wrongful it may be, unless the plaintiff can explicitly show that it is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Sullivan*, 526 U.S. at 50–58.

---

[3] Such claims are: (1) Count I: Malicious Prosecution under 42 U.S.C. § 1983; (2) Count II: Equal Protection Violation (Racial Discrimination) under 42 U.S.C. § 1983; (3) Count VII: Brady Violations/Prosecutorial Misconduct under 42 U.S.C. § 1983; (4) Count VIII: Coerced Plea/Due Process Violation under 42 U.S.C. § 1983; (5) Count IX: IIED under state law; and (6) Count XIII: Sixth Amendment Violation/Ineffective Assistance of Counsel under 42 U.S.C. § 1983.

In the context of § 1983 suits against public defenders, the Supreme Court has plainly stated that "a public defender does *not* act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk*, 454 U.S. at 325 (emphasis added). Instead, a public defender can be held liable under § 1983 in connection with a criminal representation only if the plaintiff can prove that the lawyer "engaged in a conspiracy with state officials to deprive [the plaintiff] of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984).

Here, however, Plaintiff has specifically stated that he has "removed all conspiracy claims from this action" and "does not rely on a conspiracy theory to establish liability." Dkt. ## 53 at 2; 24 at 2. Additionally, Plaintiff's purported evidence of conspiracy—Exhibits 19 and 30—have been stricken from the record, *see* part III(A) above, and also do not support an inference of conspiracy between Mr. McCully, Valley Defenders, and the prosecutors. And the evidence that does exist in the record suggests that all the actions taken by Mr. McCully and Valley Defenders in the underlying state court matter fall within the scope of the traditional functions of defense counsel in a criminal proceeding. *See generally* Dkt.

There is thus no basis to apply the *Tower* exception or otherwise find these Defendants liable to Plaintiff under § 1983. And so the Court DENIES Plaintiff's Motion and GRANTS summary judgment to Mr. McCully and Valley Defenders on all § 1983 claims.[4]

---

[4] Such claims are: (1) Count II: Equal Protection Violation (Racial Discrimination) under 42 U.S.C. § 1983; and (2) Count XIII: Sixth Amendment Violation/Ineffective Assistance of Counsel under 42 U.S.C. § 1983.

3. § 1983 Claim for Malicious Prosecution Against Officers Ridgeway, Adams, and Sagiao

The Renton Defendants contend that Plaintiff's malicious prosecution claims against the police officers should be dismissed because Plaintiff has not established the elements of a claim for malicious prosecution under 42 U.S.C. § 1983. *See* Dkt. # 70 at 14–17. The Court agrees.

"[T]o prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [them] with malice and without probable cause, and that [the defendants] did so for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal quotation marks and citation omitted). "Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). And in Washington, "a malicious prosecution claim requires the plaintiff to prove: (1) the defendant instituted or maintained the alleged malicious prosecution; (2) lack of probable cause to institute or continue the prosecution; (3) malice; (4) the proceedings ended on the merits in favor of the plaintiff or were abandoned; and (5) the plaintiff suffered injury or damage as a result." *Poole v. City of Vancouver*, 2025 WL 2880137, at *11 (W.D. Wash. Oct. 9, 2025) (internal quotation marks and citation omitted); *see also Bender v. City of Seattle*, 99 Wash. 2d 582, 593, 664 P.2d 492 (1983).

Here, Plaintiff's claim for malicious prosecution fails for several reasons; most glaringly, because probable cause existed as a matter of law. Probable cause exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the accused] had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). This standard is met here, as the circumstances known to the police officers at the time they initiated the criminal proceeding were: (1) multiple individuals told police that they

saw Plaintiff assault Ms. Allen; (2) Plaintiff had admitted to police that he shoved Ms. Allen, i.e., engaged in an act that constitutes assault under Washington State law; and (3) Ms. Allen had red marks on her neck. A prudent person would thus conclude that there was a fair probability that Plaintiff had committed Assault in the 4th Degree based on the totality of the circumstances.

Nothing in Plaintiff's filings rebuts this finding or otherwise creates a genuine dispute of material fact as to probable cause. As an initial matter, Plaintiff's Response does not even mention "probable cause" or "malicious prosecution," let alone explain why probable cause was lacking. *See generally* Dkt. # 79. And Plaintiff's Motion for Summary Judgment, while mentioning probable cause and stating that Defendants acted without it, likewise fails to explain why it was unreasonable for the officers to conclude that there was a fair probability that Plaintiff assaulted Ms. Allen based on the totality of the circumstances and the applicable legal standards. *See generally* Dkt. # 59.

The Court also does not find that the allegations in the FAC would permit such a conclusion. Per the FAC, "Defendants lacked probable cause because they possessed exculpatory evidence proving Plaintiff's innocence from day one, including: (a) Theft admission by Jason Lang (body camera); (b) Racial epithet admission by Tiffany Allen (body camera); (c) Owner's apology email acknowledging employee misconduct; (d) Manager's video apology and refund on doorbell video; (e) Domino's surveillance video (concealed by prosecutors)." Dkt. # 17 at 146; *see also* Dkt. # 59 at 13. But none of this evidence exculpates Plaintiff for assault under Washington law, as Washington does not recognize a fighting words or verbal provocation defense for assault. *See generally* RCW 9A.16 ("Defenses"). And even if Washington did recognize such a defense, this evidence would still not be enough to "negate objective probable cause" as a matter of law, *see* Dkt. # 59 at 13, as probable cause can still exist *even if* the accused

may have an innocent explanation for the conduct or a valid legal defense.[5] Likewise, probable cause can still exist even if it is later determined that the accused is innocent.[6] And, contrary to Plaintiff's contention, the Domino's CCTV video actually appears to inculpate Plaintiff, not exculpate him. Thus, even if the Court considers Plaintiff's purported "exculpatory evidence," it still finds that "a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of [Plaintiff's explanations]—that there was a substantial chance of criminal activity" or a fair probability that Plaintiff assaulted Ms. Allen. *Wesby*, 583 U.S. at 61 (internal quotation marks and citation omitted).

Accordingly, the existence of probable cause affords a complete defense to Plaintiff's malicious prosecution claim. *See Poole*, 2025 WL 2880137, at *11. The Court therefore DENIES Plaintiff's Motion and GRANTS summary judgment in favor of Officers Ridgeway, Adams, and Sagiao on this claim.

---

[5] *See, e.g.*, *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The mere existence of some evidence that could suggest self-defense does not negate probable cause."); *D.C. v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."); *State v. Graham*, 130 Wash. 2d 711, 725, 927 P.2d 227 (1996) ("[P]robable cause is not negated merely because it is possible to imagine an innocent explanation for observed activities.") (internal quotation marks and citation omitted).

[6] *See, e.g.*, *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009) (concluding "that there exists no genuine issue of material fact regarding probable cause[,]" despite the accused eventually being exonerated for the crime and alleging that the officers acted in bad faith); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995) ("[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause."); *Knapp v. Goudschaal*, 2025 WL 2306534, at *1 (W.D. Wash. Aug. 11, 2025) ("That the State subsequently lost faith in its ability to prove its case beyond a reasonable doubt at trial (whatever the merits of that decision) does not negate the [initial] probable cause determination[.]").

4. § 1983 Claim for Equal Protection Violation/Racial Discrimination Against the City of Renton, the Renton Municipal Prosecutor's Office, Commander Gray, and Officers Ridgeway, Adams, and Sagiao

The Renton Defendants contend that Plaintiff's equal protection claim against the remaining Defendants must be dismissed because Plaintiff has provided no evidence of racial discrimination to support such a claim. See Dkt. # 70 at 17–18. The Court agrees.

To prevail on a § 1983 equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation omitted). A plaintiff need not "prove that the challenged action rested solely on racially discriminatory purposes." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). But they do need to prove that an "invidious discriminatory purpose" was at least a "motivating factor" in the decision. *Id.* at 266. This, in turn, requires presenting actual evidence that the defendant discriminated on the basis of race; simply stating that the plaintiff is a member of a particular class and that the defendant is biased, without any affirmative evidence, is not enough to survive a motion for summary judgment. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

In the FAC and Plaintiff's Motion for Summary Judgment, Plaintiff alleges that Defendants treated Plaintiff differently because of his race based on the following: (1) the different races of the people involved in the incident; (2) the police officer's differential treatment of the various statements made by the individuals involved in the incident; (3) Defendants' failure to consider Plaintiff's "exculpatory evidence"; (4) the police officers' failure to investigate and charge the other employees with crimes; (5) the offensive and racially coded language used by the employees; (6) Plaintiff's own statements that Defendants acted with bias; and (7) Plaintiff's own statements concerning racial disparities in policing and a "pervasive

custom" of racial discrimination at the Renton Police Department. *See* Dkt. ## 17 at 147–50; 59 at 14–15, 18–22. This information, however, is insufficient to satisfy Plaintiff's evidentiary burden at the summary judgment stage.

First, the Court notes that the Domino's employees are not Defendants in this action or affiliated with the Renton Police Department. Thus, any discriminatory language or offensive conduct by the employees cannot, standing alone, provide a basis to find that Defendants acted with discriminatory intent. Second, as explained in part III(B)(3) above, the Court does not find Plaintiff's purported "exculpatory evidence" to be exculpatory. Defendants' failure to consider it thus does not support an inference of discrimination. Third, the Court does not believe that the record supports Plaintiff's claim that the police officers treated Plaintiff's statements any differently from those of the employees, especially when the assault charge was based in part on Plaintiff's own statement that he shoved Ms. Allen. Fourth, the Court does not find anything discriminatory about Defendants' decision to investigate, cite, and charge only Plaintiff with assault, as nothing in the record suggests that anyone besides Plaintiff committed an "assault" as defined under Washington law.[7] And finally, there is no evidence in the record tying Defendants and their actions on January 27, 2023, to any purported pattern of racial discrimination at the Renton Police Department. Thus, even if the Court were able to find that Defendants treated Plaintiff differently, there is still nothing in the record (beyond Plaintiff's conclusory statements)

---

[7] The Court notes that Ms. Allen's language, although deeply offensive, is not "assault." *See* WPIC 35.50 (defining "assault" as "an act, with unlawful force, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented"). Her language also does not satisfy Washington's definition of a "hate crime offense." *See* RCW 9A.36.080(c) ("Words alone do not constitute a hate crime offense unless the context or circumstances surrounding the words indicate the words are a threat. Threatening words do not constitute a hate crime offense if it is apparent to the victim that the person does not have the ability to carry out the threat.").

that would allow a reasonable juror to find that such differential treatment was motivated, at least in part, by Plaintiff's race.

Plaintiff's § 1983 equal protection claim therefore fails as a matter of law. And so the Court DENIES Plaintiff's Motion and GRANTS summary judgment in favor of the remaining Defendants on this claim.

5. § 1983 Claims for Supervisor Liability Against Commander Gray & Failure to Intervene Against Officer Adam, Officer Sagiao, and Commander Gray

The Renton Defendants contend that the Court should dismiss Plaintiff's § 1983 failure to intervene and supervisory liability claims against the police officers because Plaintiff has presented no evidence of an underlying constitutional violation. *See* Dkt. # 70 at 18–19. The Court agrees.

Under Ninth Circuit precedent, a police officer that does not directly participate in a constitutional violation may still be found liable for failure to intervene if: (1) "their fellow officers violate[d] the constitutional rights of a suspect"; (2) "they were aware of the violation as it happened"; (3) they "had an opportunity to intercede"; (4) and they did not intercede. *See Tobias v. Arteaga*, 996 F.3d 571, 583–84 (9th Cir. 2021) (internal quotation marks and citations omitted). They may also be found liable as a supervisor if the plaintiff can show that they had "personal involvement in the constitutional deprivation" or if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). Liability under either theory thus "requires the existence of an underlying constitutional violation." *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 752 n.21 (E.D. Cal. 2022).

Here, however, Plaintiff has not provided evidence of a specific constitutional violation. *See* part III(B)(3)–(4); *see also* Dkt. ## 17 at 150–51 (failing to identify any specific

constitutional violations under these claims); 59 & 79 (failing to address supervisory liability or failure to intercede). Plaintiff's supervisory liability and failure to intercede claims are therefore unsupported by the record, and so the Court DENIES Plaintiff's Motion and GRANTS summary judgment in favor of Commander Gray, Officer Adam, and Officer Sagiao on these claims.

6. § 1983 Municipal Liability Claim Against the City of Renton and the Renton Municipal Prosecutor's Office

The Renton Defendants contend that Plaintiff's municipal liability claims should be dismissed because Plaintiff has not established the elements of a valid *Monell* claim. *See* Dkt. # 70 at 19–21. The Court agrees.

To hold a municipality liable under § 1983, a plaintiff "must show (1) that [they] possessed a constitutional right of which [they were] deprived; (2) that the [municipality] had a policy; (3) that the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (internal quotation marks and citations omitted). A plaintiff can succeed on such a claim only if they can show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Bell v. Williams*, 108 F.4th 809, 824 (9th Cir. 2024) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Establishing municipal liability under *Monell*, however, is quite difficult. *See id.* And courts regularly reject *Monell* claims that hinge on a single instance of unlawful conduct. *See, e.g.*, *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) (explaining that generally, "a single instance of unlawful conduct is insufficient to state a claim for municipal liability under [§] 1983").

Simply put, Plaintiff has not met his burden under *Monell*. The FAC's vague allegations of the existence of "policies, customs, and practices that caused Plaintiff's constitutional

injuries" fail to put the Court on notice as to which constitutional right has allegedly been deprived, what policy or custom is being challenged, and how such policy or custom amounts to a deliberate indifference to Plaintiff's rights and the moving force behind a constitutional injury. *See* Dkt. # 17 at 152. And Plaintiff's later filings, although continuously referencing a purported pattern of constitutional violations and misconduct, do not cure these pleading deficiencies, nor do they satisfy Plaintiff's evidentiary burden on a motion for summary judgment. *See generally* Dkt. ## 59 & 79.

Plaintiff has thus failed to state a claim for *Monell* liability as a matter of law, and so the Court DENIES Plaintiff's Motion and GRANTS summary judgment in favor of the City of Renton and the Renton Municipal Prosecutor's Office on this claim.

7. State Law IIED Claim Against Mr. McCully, Valley Defenders, the City of Renton, the Renton Municipal Prosecutor's Office, Commander Gray, and Officers Ridgeway, Adams, and Sagiao

Defendants contend that Plaintiff has not established the elements of an IIED claim. *See* Dkt. ## 70 at 21; 72 at 18. The Court agrees.

In Washington, the tort of IIED (or outrage) requires "proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wash. 2d 192, 195, 66 P.3d 630 (2003). The Washington Supreme Court has further clarified that such a claim "must be predicated on behavior *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*." *Id.* at 196 (internal quotation marks and citations omitted) (emphasis in original).

Here, Plaintiff fails to provide evidence, let alone allegations, to satisfy the three elements of an IIED claim. Given the undisputed evidence in the record, particularly the contents of the

CCTV video, no reasonable juror could find that Defendants "pursu[ed] an innocent man for over two years despite knowing exonerating evidence[.]" Dkt. # 17 at 155. Plaintiff's Motion and Responses also fail to mention the IIED claim. *See generally* Dkt. ## 59, 78, & 79. And the Court finds no other arguments or evidence in the record that would create a genuine dispute of material fact as to whether Defendants committed this tort. *See generally* Dkt.

Plaintiff's IIED claim thus fails as a matter of law, and so the Court DENIES Plaintiff's Motion and GRANTS Defendants summary judgment on this claim.

8. State Law Negligent Investigation Claim Against the City of Renton and Officers Ridgeway, Adams, and Sagiao

The Renton Defendants contend that Plaintiff cannot assert a claim for negligent investigation because no such claim exists under Washington law. *See* Dkt. # 70 at 21–22. The Court agrees.

The law is clear: in Washington, there is no "cognizable claim for negligent investigation against law enforcement officials and other investigators." *Janaszak v. State*, 173 Wash. App. 703, 725, 297 P.3d 723 (2013) (collecting cases). And Plaintiff's filings do not allege, let alone prove, a more general claim of negligence against any Defendant. *See* Dkt. ## 17, 59, & 79. The Court thus DENIES Plaintiff's Motion and GRANTS summary judgment in favor of the City of Renton and Officers Ridgeway, Adams, and Sagiao on Plaintiff's negligent investigation claim.

9. State Law Defamation Claim Against Officers Ridgeway, Adams, and Sagiao

The Renton Defendants contend that there is no evidence in the record to support Plaintiff's defamation claim. *See* Dkt. # 70 at 22–23. The Court agrees.

In Washington, "[w]hen a defendant in a defamation action moves for summary judgment, the plaintiff has the burden of establishing a prima facie case on all four elements of

defamation: falsity, an unprivileged communication, fault, and damages." *LaMon v. Butler*, 112 Wash. 2d 193, 197, 70 P.2d 1027 (1989). And this "prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists." *Id.*

Plaintiff has not met his burden of establishing a prima facie case of defamation. Plaintiff's filings do not present specific material facts to support a prima facie case for all four elements of his defamation claim. *See generally* Dkt. ## 17, 59, & 79. Nor has Plaintiff responded to the strong falsity, privilege, and damages arguments raised by the Renton Defendants in their motion. *See id.*; *see also* Dkt. # 70 at 22–23. The Court thus DENIES Plaintiff's Motion and GRANTS summary judgment in favor of Officers Ridgeway, Adams, and Sagiao on Plaintiff's defamation claim.

10. State Law Constructive Fraud & Breach of Fiduciary Duty Claims Against Mr. McCully and Valley Defenders

Mr. McCully and Valley Defenders contend that there is no evidence in the record to support Plaintiff's constructive fraud and breach of fiduciary duty claims. *See* Dkt. # 72 at 19–20. The Court agrees.

In Washington, "[a] claim for breach of fiduciary duty requires the claimant to prove: (1) the existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach caused the injury." *Rafel L. Grp. PLLC v. Defoor*, 176 Wash. App. 210, 226, 308 P.3d 767 (2013). Meanwhile, a constructive fraud claim requires a plaintiff to "show willful and unreasoned action without consideration and regard for facts or circumstances." *Petition of Port of Seattle*, 80 Wash. 2d 392, 398, 495 P.2d 327 (1972). In other words, that the defendant "fail[ed] to perform an obligation, not by an honest mistake, but by some interested or sinister

motive." *Green v. McAllister*, 103 Wash. App. 452, 468, 14 P.3d 795 (2000), *as amended on clarification* (Nov. 22, 2000) (internal quotation marks and citation omitted).

Plaintiff's evidence, however, fails to sustain a claim under either standard. As stated in the FAC, Mr. McCully and Valley Defenders breached their duty to Plaintiff by: (1) "Failing to obtain exculpatory video evidence despite having the witness information to do so;" (2) "Allowing prosecutors to subpoena their records without objection;" (3) "Failing to move to dismiss charges despite overwhelming evidence of innocence;" (4) "Acknowledging prosecutorial misconduct while doing nothing to remedy it;" (5) "Being listed as prosecution witnesses against their own client;" and (6) "Representing Plaintiff for nine months without taking any meaningful action to secure his acquittal." Dkt. # 17 at 161. Such allegations, however, are not supported by the record.

Instead, Defendants' unrebutted evidence demonstrates that defense counsel actively sought to obtain the CCTV video, engaged in normal and proper communications with opposing counsel, and were intending to subpoena the CCTV video before they were discharged. *See generally* Dkt. The Court also cannot find that Defendants' purported failure to procure the CCTV video caused Plaintiff any damage given the actual contents of the video and the ultimate resolution of the charge. Nor does the Court believe that Defendants' failure to seek acquittal or dismissal of the assault charge was a mistake given the factual record—namely, the eyewitness accounts, the CCTV video, and Plaintiff's own admission—and the governing laws. Nor is there any evidence in the record from which a reasonable juror could infer that Mr. McCully or Valley Defenders acted with a "sinister motive" or otherwise sought to deprive Plaintiff of competent legal representation in the underlying state court action.

The Court thus DENIES Plaintiff's Motion and GRANTS summary judgment in favor of Mr. McCully and Valley Defenders on Plaintiff's constructive fraud and breach of fiduciary duty claims.

11. Other Issues

*Defendants' Unaddressed Arguments.* Because the Court is dismissing Plaintiff's claims for the reasons above, it need not reach the various other arguments raised by Defendants' filings. It notes, however, that many of these arguments appear meritorious and would likely provide a separate and additional basis for dismissal of some of Plaintiff's claims.

*Rodgers v. King Beast Pizza Inc.* Given Plaintiff's filings, the Court believes it necessary to confirm, for the avoidance of any doubt, that its findings and conclusions in this order are based solely on the record before it; the filings, rulings, and outcome in Plaintiff's King County Superior Court case concerning the incident—*Rodgers v. King Beast Pizza Inc.*, Case No. 25-2-02291-9 KNT—are unrelated to the Court's resolution of the instant summary judgment dispute.

*Plaintiff's Conspiracy Claims.* Due to a certain degree of confusion concerning Plaintiff's conspiracy claims throughout the filings, the Court believes it useful to state for the record that Plaintiff's § 1985 claims—Counts VI and XII from the FAC—were voluntarily dismissed pursuant to Plaintiff's April 22, 2026 Notice of Clarification. *See* Dkt. # 24; *see also* Dkt. # 53 at 2. Such dismissal was without prejudice.

*Plaintiff's Allegations of Misconduct in this Action.* Because Plaintiff's filings repeatedly allege litigation misconduct by defense counsel, the Court believes it necessary to state for the record that it finds Defendants' filings to date to be accurate, non-frivolous, and appropriately presented to the Court. It also cautions Plaintiff against making such serious allegations to the Court absent any specific proof, especially when many of Plaintiff's own filings appear to

misstate the applicable legal standards, violate the local rules, and advance positions that are wholly unsupported by the evidentiary record.

## V
## CONCLUSION

For these reasons, it is ORDERED that:

(1) Defendants' Motions to Strike (Dkt. ## 62 & 72) are GRANTED. The Court STRIKES Exhibits 11, 15–28, 22A, 29A, 30, & 33 (Dkt. ## 59-14, 59-18–28, 59-31, 59-34–36, 59-38–39, & 59-42).

(2) Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability (Dkt. # 59) is DENIED.

(3) The Renton Defendants' Motion for Summary Judgment (Dkt. # 70) is GRANTED. The Court DISMISSES WITH PREJUDICE all remaining claims against the Renton Defendants.

(4) Shawn McCully's and Valley Defenders' Cross-Motion for Summary Judgment (Dkt. # 72) is GRANTED. The Court DISMISSES WITH PREJUDICE all remaining claims against Mr. McCully and Valley Defenders.

(5) Summary judgment is ENTERED in favor of Defendants and this case is closed.

Dated this 16th day of November, 2026.

John H. Chun
United States District Judge